## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| **DANIELLE L. BARBE,** | : | **Bankruptcy No. 10-26445-CMB** |
| | : | |
| Debtor. | : | **Chapter 7** |

..................................................................:..................................................................

| | | |
|---|---|---|
| **David Ivory, Ivory Entertainment,** | : | |
| **LLC, and Ivory Productions, Inc.,** | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Adversary No. 10-2561-BM** |
| | : | |
| **Danielle L. Barbe,** | : | |
| Defendant. | : | |

..................................................................:..................................................................

| | | |
|---|---|---|
| **David Ivory, Ivory Entertainment,** | : | |
| **LLC, and Ivory Productions, Inc.,** | : | |
| Movants, | : | |
| | : | |
| v. | : | **Related to Doc. No. 25** |
| | : | |
| **Danielle L. Barbe,** | : | |
| Respondent. | : | |

### <u>MEMORANDUM OPINION</u>

**AND NOW,** this **16th day** of **March, 2012**, upon consideration of the adversary complaint filed by David Ivory, Ivory Entertainment, LLC, and Ivory Productions, Inc. (hereafter collectively "Ivory"), wherein Ivory (a) objects to the entry of the Chapter 7 discharge of Danielle Barbe, the above-captioned debtor (hereafter "the Debtor"), pursuant to 11 U.S.C. § 727(a)(2) - (4), and, alternatively, (b) seeks a determination that his claim is excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(2)(A) [Adversary No. 10-2561];

and also upon consideration of Ivory's objection to the Debtor's

amendment of her Bankruptcy Schedules B and C, as well as her amendment of

her Statement of Financial Affairs [Document No. 25 in main case docket];

and subsequent to notice and a trial on the matters which was held on

September 19, 2011;

the Court hereby determines that it shall enter an order that:

(a)    overrules Ivory's objection to the entry of the Debtor's Chapter 7 discharge

pursuant to § 727(a)(2) - (4);

(b)    discharges Ivory's claim, that is that determines that such claim is not

excepted from the Debtor's discharge pursuant to § 523(a)(2)(A); and

(c)    overrules Ivory's objection to the Debtor's amendments of her Bankruptcy

Schedules B and C and her Statement of Financial Affairs.

The rationale for the Court's decision is set forth below.

**I.**

The Debtor filed her Chapter 7 bankruptcy petition on September 9, 2010.

Prior to that time she had a contractual relationship with Ivory.  Pursuant to the

contracts between the parties, Ivory both managed and worked to develop her

career as a singer in the entertainment industry.

In 2009 the Debtor and Ivory became embroiled in litigation in the

California Superior Court regarding their contractual relationship.  The parties

disagree as to what was the ultimate outcome of such litigation.  However, the

Court understands the parties to agree, and the Court finds in any event, that (a)

the California Superior Court ruled that Ivory could continue to pursue against the

2

Debtor a claim for attorney fees that he incurred during such litigation, but (b) such court has not yet awarded to Ivory any such attorney fees.

The Debtor has scheduled three separate disputed claims of $327,000 each in her Bankruptcy Schedule F, with each such disputed claim corresponding to each of the three instant Ivory plaintiffs.  As the Court understands it, each such $327,000 claim is, in reality, representative of the same single claim for $327,000 against the Debtor, to wit the aforesaid disputed claim for attorney fees incurred by Ivory in the California Superior Court litigation.

Ivory seeks to except his claim for attorney fees from the Debtor's Chapter 7 discharge pursuant to § 523(a)(2)(A).  Ivory also objects to the entry of the Debtor's Chapter 7 discharge on several grounds pursuant to § 727(a)(2) - (4).

Prior to the trial regarding the instant matters the Debtor amended her Bankruptcy Schedules B and C, as well as her Statement of Financial Affairs. Ivory objects to those amendments as well at this time.

## II.

The Debtor contends, as a threshold matter, that Ivory lacks standing to object to the entry of her Chapter 7 discharge under § 727(a)(2) - (4).  The Debtor's position is that Ivory lacks such standing because, according to the Debtor, Ivory does not have a pre-petition claim against her and he is, thus, not one of her creditors.

11 U.S.C. § 727(c)(1) dictates that Ivory may object to the entry of the Debtor's Chapter 7 discharge only if Ivory is one of her creditors.  *See* 11 U.S.C.A. § 727(c)(1) (West 2012); 6 Collier on Bankruptcy, ¶ 727.16[1] at 727-64

3

(Bender 2011).  Therefore, it must be the case that Ivory possesses a pre-petition claim against the Debtor in order for Ivory to object to her Chapter 7 discharge.  *See* 11 U.S.C.A. § 101(10) (West 2012) (creditor is defined as one who possesses a pre-petition claim or a claim that is treated like a pre-petition claim).

Interestingly, the Debtor argues that Ivory lacks a pre-petition claim notwithstanding the presence of the disputed $327,000 claim for attorney fees that she herself has scheduled in favor of Ivory in her Bankruptcy Schedule F. As the Court understands it, the Debtor contends that such claim does not actually qualify as such for bankruptcy purposes on the ground that it was neither liquidated nor necessarily reduced to judgment by the California Superior Court pre-petition.

Unfortunately for the Debtor, however, the Court must reject her position outright.  That is because, as a matter of law, that a claim is disputed, that a claim has not been liquidated, and/or that a claim has not been reduced to judgment pre-petition does not operate to disqualify such claim from being classified as such for bankruptcy purposes.  *See* 11 U.S.C.A. § 101(5)(A) (West 2012) ("The term 'claim' means ... right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, ... disputed, [or] undisputed ..."); In re Bailey, 375 B.R. 410, 415 (Bankr.S.D.Ohio 2007); In re Hermanson, 273 B.R. 538, 544-45 (Bankr.N.D.Ill. 2002).

Therefore, Ivory (a) possesses a pre-petition claim against the Debtor, (b) is thus a creditor of the Debtor, and (c) consequently has standing to object to

4

the entry of the Debtor's Chapter 7 discharge pursuant to § 727(a)(2) - (4).

**III.**

Ivory objects to the entry of the Debtor's Chapter 7 discharge pursuant to § 727(a)(2) - (4).  11 U.S.C. § 727(a)(2) - (4) generally provides that a debtor shall be denied a discharge if:

(2)  the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

(A)  property of the debtor, within one year before the date of the filing of the petition; or

(B)  property of the estate, after the date of the filing of the petition;

(3)  the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; [or]

(4)  the debtor knowingly and fraudulently, in or in connection with the case –

(A)  made a false oath or account.

5

11 U.S.C.A. § 727(a)(2) - (4) (West 2012).  "The burden of proving a ground for objection to discharge is on the objector."  6 Collier on Bankruptcy, ¶ 727.01[2] at 727-8.  Such burden need be met only by a preponderance of the evidence.  *See Id.*

**A.    § 727(a)(2).**

Ivory contends in her complaint and pretrial statement that the Debtor (a) transferred some of her property within a year of filing for bankruptcy, and (b) also concealed some of her property within such year, and continues to conceal such property post-petition.

More specifically, Ivory contends, and the Debtor does not dispute, that, on March 19, 2010, the Debtor transferred all of her intangible assets – i.e., all of her rights and interests in her songs, including her masters, licenses, copyrights, publishing rights, and royalties – to a limited partnership that she had formed by the name of Glass Bones Records.  The parties agree that the Debtor then transferred a 90% interest in Glass Bones Records to her mother.  These transfers occurred subsequent to the commencement of the California Superior Court litigation and less than one year prior to September 9, 2010, which is when the Debtor filed for bankruptcy.  Ivory contends that the timing of such transfers – i.e., while the aforesaid California litigation was ongoing – evidences that the Debtor made such transfers with an intent to defraud Ivory.

Unfortunately for Ivory, the Court, for several reasons, cannot agree with his foregoing position.  First, the Court cannot agree with Ivory that the sheer timing of such transfers evidences an intent by the Debtor to defraud him.  The

6

Court must so find because such transfers occurred well prior to when the

California Superior Court handed down its initial ruling in the litigation before it.

Because that is the case, and since no other evidence was introduced at trial that

tended to prove that the Debtor was concerned in March of 2010 that she might

not prevail in such California litigation, Ivory has failed to preponderantly prove

that she made the aforesaid transfers with an intent to defraud him.

Second, the Court points out that the first transfer of intangible assets into

Glass Bones Records did not operate to deprive creditors of the value of such

assets – and thus was not fraudulent – given that the Debtor received 100% of

the ownership interest in Glass Bones Records in return for such transfer.  As for

the second transfer of the 90% interest in Glass Bones Records to her mother,

the Debtor credibly testified, and the Court thus finds, that she engaged in that

transfer (a) so as to compensate her mother for prior significant transfers that her

mother had made to her of cash so as to aid her in her fledgling music career,

and (b) for future cash considerations from her mother as well.  The Court cannot

conclude that this second transfer is fraudulent either given that the Court finds

that the Debtor received more than reasonably equivalent value in return for her

transfer of the 90% ownership interest in Glass Bones Records.  Such

determination by the Court is not affected by the fact that such transfer might

constitute a preference given that an "intent to prefer creditors is not equivalent to

the intent to hinder, delay or defraud creditors" that is required under § 727(a)(2).

*See* 6 <u>Collier on Bankruptcy</u>, ¶ 727.02[3][c] at 727-19.

Therefore, Ivory has not preponderantly proven that the Debtor's transfer

7

of her intangible assets into Glass Bones Records, and then her transfer of a

90% interest in Glass Bones Records to her mother, were made with an intent to

hinder, delay, or defraud either Ivory or any other creditor of the Debtor.

As for Ivory's allegation that the Debtor concealed some of her property

within the year before she filed for bankruptcy, the Court must reject such charge

by Ivory outright given that the sole basis upon which Ivory predicates such

charge is his allegation, in turn, that the Debtor has failed to disclose many of her

assets in her Bankruptcy Schedules.  Put differently, since Ivory confines his

concealment charge under § 727(a)(2) to alleged acts of concealment by the

Debtor that necessarily must have occurred post-petition, Ivory necessarily fails

to preponderantly prove that the Debtor concealed any property within the year

prior to when she filed for bankruptcy.

Finally, as just set forth, the acts of concealment that the Debtor is alleged

to have committed post-petition are her alleged failures to disclose certain of her

assets in her Bankruptcy Schedules.  Because such alleged omissions by her

also constitute the basis for Ivory's discharge objection under § 727(a)(4), the

Court will deal with them below when it addresses such discharge objection

under § 727(a)(4).  Because, as set forth below, Ivory cannot prevail under

§ 727(a)(4), he also cannot prevail with respect to his concealment charge under

§ 727(a)(2)(B).

**B.**    **§ 727(a)(3).**

Ivory's discharge objection under § 727(a)(3) is predicated upon his

contention that the Debtor concealed or falsified documentation from which the

8

Debtor's financial condition and business transactions might otherwise be ascertained.

First, it appears to the Court, after examining Ivory's complaint and his pretrial statement, that the only documentation that Ivory really contends the Debtor falsified was her Bankruptcy Schedules and her Statement of Financial Affairs. Because such alleged falsification by the Debtor constitutes the basis for Ivory's discharge objection under § 727(a)(4), the Court will deal with the same below when it addresses such discharge objection under § 727(a)(4).

Second, it likewise appears to the Court, after examining Ivory's papers, that much of the documentation that Ivory really contends was concealed by the Debtor is information that Ivory contends should have been, but was not, disclosed in her Bankruptcy Schedules and Statement of Financial Affairs. Once again, the Court will deal with such alleged concealment when it deals with Ivory's discharge objection under § 727(a)(4).

With respect to the § 727(a)(3) discharge objections by Ivory that the Court will deal with when it addresses Ivory's discharge objection under § 727(a)(4) (i.e., those which the Court alludes to in the preceding two paragraphs), the Court recognizes that, in order for a creditor to prevail under § 727(a)(3), it need not generally prove that the Debtor acted with bad intent, *see* In re Burrik, 459 B.R. 881, 891 (Bankr.W.D.Pa. 2011), whereas fraudulent intent is a required element that must be proven before one can prevail under § 727(a)(4). The Court concludes, however, that it will not prejudice Ivory by so deferring dealing with his foregoing § 727(a)(3) discharge objections. That is

9

because Ivory confines his discharge objections under § 727(a)(3) to alleged acts

of falsification and concealment by the Debtor.  Acts of concealment and

falsification both necessarily imply the existence of bad intent on the part of the

actor.  Therefore, bad intent on a debtor's part is a required element to be

proven, even under § 727(a)(3), if the precise alleged violation under § 727(a)(3)

is an act of concealment or falsification.  Bad intent on the part of a debtor need

not be proven in order to prevail under § 727(a)(3), for instance, if what is alleged

is merely that such debtor failed to keep or preserve recorded information.  *See* 6

Collier on Bankruptcy, ¶ 727.03[3][d] at 727-32.

The only other documentation that Ivory appears to contend has been

concealed by the Debtor is (a) information regarding certain of the monthly

expenses that she has scheduled in her Bankruptcy Schedule J, and (b) her

2010 income tax return.

Dealing first with the tax return, Ivory concedes that the Debtor obtained

an extension of time to timely file such return but Ivory argues nonetheless that

the Debtor failed to provide a satisfactory reason for why she obtained such

extension.  The Court concludes that, because the Debtor obtained an extension

of time within which to file such return, she has an explanation for why she has

not produced such return which is sufficient to counter Ivory's charge that she

has concealed the same.  The Court consequently holds that the Debtor need

not also provide a reason for why she obtained such extension of time within

which to file such tax return in order to defeat Ivory's charge that she concealed

such return.  Because she has obtained such filing extension, the Court holds

10

that Ivory has not preponderantly proven that the Debtor concealed such tax
return.

As for documentation regarding certain of the Debtor's monthly expenses
that she has scheduled in her Bankruptcy Schedule J, Ivory argues that he
cannot verify the accuracy of (a) the $750 that the Debtor has so scheduled for
monthly rent, (b) the $100 that has been so scheduled for monthly electricity and
heating fuel, and (c) the $500 monthly business expense figure that is set forth in
such schedule.  The Debtor credibly testified at trial that she still lives with her
parents, makes some payments for rent and/or utilities in cash, and satisfies
such expenses on a fairly regular basis by also making payment in another form,
that is by purchasing other household items that are needed in lieu of making a
formal rent or utility payment.  Because the Debtor operates under such an
arrangement with her parents, and since one would not normally retain – and
frankly would not be expected to retain – much in the way of records or
documentation to evidence the operation of such an arrangement, the Court
cannot even find that the Debtor has actionably failed to keep or preserve
records regarding the same, let alone that she has concealed such records.  *See*
6 Collier on Bankruptcy, ¶ 727.03[3][b] at 727-30 ("consumer debtors have no
obligation to keep books"), and ¶ 727.03[3][g] at 727-33 ("Few consumer debtors
maintain anything more than, at most, a collection of bills, receipts and canceled
checks, and, absent a sudden and large dissipation of assets, a discharge should
not be denied in a typical consumer bankruptcy case due to a lack of books or
records").

11

As for documentation concerning the $500 monthly business expense figure, the Court is satisfied that the business to which such expense pertains – i.e., the Debtor's music career that is largely operated through Glass Bones Records – is small enough that the Court would not expect the Debtor to retain much in the way of records to support how much she incurs out-of-pocket on a relatively frequent basis when she is out on the road performing her music. *See* 6 Collier on Bankruptcy, ¶ 727.03[3][g] at 727-33 ("a business may be so small that no books or records are required to be kept"). Therefore, the Court cannot find that the Debtor has actionably failed to keep or preserve records regarding the same, let alone that she has concealed such records.

**C.      § 727(a)(4).**

As mentioned above, Ivory objects to the entry of the Debtor's Chapter 7 discharge pursuant to § 727(a)(4) on the ground that the Debtor has knowingly and fraudulently omitted information from, or misstated information contained in, her Bankruptcy Schedules and her Statement of Financial Affairs. If Ivory is correct, then the Debtor has knowingly and fraudulently made false oaths in her bankruptcy case, which false oaths are actionable under § 727(a)(4)(A) in particular. *See* In re Bernard, 99 B.R. 563, 570 (Bankr.S.D.N.Y. 1989). After examining Ivory's complaint and pretrial statement, the Court finds that Ivory has not really advanced any other ground for objection to discharge under § 727(a)(4).

As is expressly stated in § 727(a)(4)(A), a false oath is not actionable thereunder unless it was "knowingly and fraudulently made." 6 Collier on

12

Bankruptcy, ¶ 727.04[1][a] at 727-36; *see also* Bernard, 99 B.R. at 570 (same).

"Additionally, [in order for] the false oath made by the debtor [to be so actionable, it] must have related to a material matter." Bernard, 99 B.R. at 570; *see also* 6 Collier on Bankruptcy, ¶ 727.04[1][b] at 727-37 (same).  Finally, and as a corollary of the preceding points,

> [a] debtor's omission of items without intent to conceal them from creditors, due either to inadvertence or because the property is not the type that comes to mind when listing one's disposable property, would not constitute a knowingly false statement under oath made by a debtor with intent to defraud creditors.

Bernard, 99 B.R. at 570.

Ivory has identified a veritable laundry list of information that he contends the Debtor has either inappropriately omitted from, or misstated in, her Bankruptcy Schedules and her Statement of Financial Affairs, to wit:

(a)    Ivory contends that the Debtor has omitted numerous intangible assets from her Bankruptcy Schedule B, such as royalties, copyrights, publishing rights, contracts, formal and informal relationships with others, and songwriter agreements;

(b)    Ivory contends that the Debtor's First Niagara Bank checking account balance is understated in her Bankruptcy Schedule B, line 2, because the balance so stated is $1,200.00 when it should have been stated at $9,578.00;

(c)    Ivory argues that the Debtor has insufficiently disclosed her interest in

13

Glass Bones Records, the transfer of assets into Glass Bones Records in March 2010, and the subsequent transfer of 90% ownership in Glass Bones Records to her mother in March 2010;

(d)     Ivory points out that the Debtor failed to originally disclose, at Question 11 in her Statement of Financial Affairs, that she had closed a bank account within one year of her bankruptcy filing;

(e)     Ivory appears to make much of the fact that the Debtor failed to originally disclose, at Question 15 in her Statement of Financial Affairs, that she had previously resided in California for some portion of the past three years prior to her bankruptcy filing;

(f)     Ivory contends that the Debtor understated by $500 the amount of compensation that she paid to her attorney for her bankruptcy filing, as reflected in her response to Question 9 in her Statement of Financial Affairs;

(g)     Ivory contends that the Debtor failed to disclose in her Bankruptcy Schedules the revenue/income that her singing career generated;

(h)     Ivory maintains that the Debtor, in her Bankruptcy Schedule J, overstated if not outright lied about her monthly expenditures for rent, utilities, and business expenses;

(i)     Ivory argues that the Debtor has listed as creditors in her Bankruptcy Schedule F two creditors that, in reality, were not creditors when she filed for bankruptcy (i.e., California Pools & Granite and Matt Muckle); and

(j)     Ivory contends that the Debtor omitted from her Bankruptcy Schedule B a

14

stage that was built for her even though, according to Ivory, the Debtor still retains such stage.

Ivory contends that each of the foregoing alleged inappropriate omissions or misstatements were knowingly made by the Debtor, and with a corresponding intent to defraud.  The Court will address each of the foregoing items in seriatim:

(a)    Certain of the intangible assets mentioned by Ivory in his papers either do not constitute assets or were not proven by Ivory to have existed when the Debtor filed for bankruptcy, which means that they were appropriately not listed in the Debtor's Schedule B (i.e., various formal and informal relationships that were not reduced to contract, one time contracts for payment that had already expired by virtue of full performance on both sides, and contracts that were simply not proven to have existed).  Most, indeed all, of the intangible assets that were proven by Ivory to have existed when the Debtor filed for bankruptcy also were appropriately omitted by the Debtor from her Schedule B because, when she so filed, such intangibles constituted the property of Glass Bones Records rather than the Debtor.  Therefore, the Debtor did not even make a false oath by omitting such intangible assets from her Schedule B, let alone a knowingly false and fraudulent false oath.

(b)    The Debtor explained and demonstrated by use of Ivory's own exhibits that the understatement of her checking account balance is due to the existence of checks that she wrote and issued on such account pre-petition that had not yet been presented for payment on her bankruptcy

15

petition filing date.  Because of such explanation, which the Court finds to be understandable, the Court cannot find that the Debtor misstated such checking account balance with an intent to defraud.

(c)     The Debtor disclosed her 10% ownership interest in Glass Bones Records in the Schedule B that she originally filed with the Court.  The Debtor failed to disclose the two transfers regarding such entity that occurred well within two years of her bankruptcy filing, which transfer information should have been disclosed originally in response to Question 10 in her Statement of Financial Affairs.  However, the Debtor credibly testified that the value of Glass Bones Records was zero when she filed for bankruptcy, and that she consequently did not think to disclose the transfers surrounding the same when she originally responded to questions in her Statement of Financial Affairs.  The Court consequently finds that the Debtor did not omit such transfer information with an intent to defraud.

(d)     The Debtor credibly testified at trial that the bank account closing in question was nothing more than an administrative matter, that is a custodial account was closed and then such account was immediately reopened at the same bank as a non-custodial account.  Because the foregoing administrative transaction did not, from a practical standpoint, result in the closing of the bank account in question, it is understandable why the Debtor (i) did not view such administrative transaction as an account closing, and (ii) consequently failed to originally disclose the same in response to Question 11 in her Statement of Financial Affairs.

16

Therefore, the Court does not find that she originally omitted such bank account closure information with an intent to defraud.

(e)   The Court frankly finds to be immaterial – and thus not actionable under § 727(a)(4)(A) – the Debtor's failure to reveal that, while she maintained her permanent residence in the Western District of Pennsylvania during the past three years, she also simultaneously spent some time in California.  As well, the Court finds to be credible the Debtor's testimony that, because she maintained her permanent residence in Pennsylvania, she did not think to mention in her Statement of Financial Affairs that she had also spent some time in California.  Given such testimony, the Court does not find that the Debtor intended to defraud when she failed to disclose that, for some period of time, she had retained a second place of residence in California.

(f)   The Court concludes that the Debtor did not understate the amount that she paid her counsel for her bankruptcy filing because, as the Debtor credibly points out, the other $500 that Ivory focuses on that was not disclosed by the Debtor as attorney compensation was, in fact, not compensation.  Instead, such $500 was paid by the Debtor to fund things like court filing fees and fees for credit counseling.  Therefore, the Debtor did not make a false oath, let alone one that was knowing and fraudulent, with respect to her disclosure regarding attorney compensation.

(g)   The Debtor appropriately omitted from her Bankruptcy Schedules information regarding the revenue/income that her singing career

17

generated because, when she filed for bankruptcy, such revenue/income constituted that of Glass Bones Records. Therefore, the Debtor did not make a false oath, let alone one that was knowing and fraudulent, by failing to so disclose such revenue/income information.

(h)    Ivory has failed to preponderantly prove that the Debtor misstated, let alone knowingly and fraudulently, the monthly expense figures that she included in her Bankruptcy Schedule J regarding rent, utilities, and business expense.

(i)    Ivory has failed to preponderantly prove that the Debtor lied when she stated in her Bankruptcy Schedule F that, as of the date of her bankruptcy filing, she owed money to California Pools & Granite and Matt Muckle.

(j)    In her Answer, the Debtor contends that the stage in question has been dismantled and that it had no value as of her bankruptcy petition filing date. Ivory did not preponderantly prove at trial that such stage had value when the Debtor filed for bankruptcy. Because the stage had no value, any omission regarding the same in the Debtor's Schedule B frankly was immaterial, which would mean that such omission could not constitute an actionable false oath under § 727(a)(4)(A). However, even if such stage should have been so scheduled by the Debtor, the Court cannot find that she intended to defraud by choosing to omit the stage from her Schedule B. The Court so holds because it is as likely as not that the Debtor simply did not believe that the stage needed to be disclosed given that it was worthless; as well, it is also equally likely that, because the stage was

18

worthless, the Debtor simply forgot about it by virtue of mere inadvertence.

For all of the foregoing reasons, the Court holds that the Debtor did not

knowingly and fraudulently make any false oaths in, or in connection with, her

bankruptcy case.

**D.    Conclusion to Objection to Discharge.**

In light of the foregoing analysis, the Court must overrule all of Ivory's

objections to the entry of the Debtor's Chapter 7 discharge that have been

advanced pursuant to § 727(a)(2) - (4).

## IV.

Ivory seeks to except his claim for attorney fees from the Debtor's Chapter

7 discharge pursuant to § 523(a)(2)(A).  11 U.S.C. § 523(a)(2)(A) provides, in

pertinent part, that a Chapter 7 discharge "does not discharge an individual

debtor from any debt ... for money, property, services, or an extension, renewal,

or refinancing of credit, to the extent obtained, by ... false pretenses, a false

representation, or actual fraud."  11 U.S.C.A. § 523(a)(2)(A) (West 2012).

After reading Count 4 of Ivory's complaint, which count sets forth Ivory's

cause of action under § 523(a)(2)(A), the Court is uncertain as to the precise

basis for such cause of action.  However, Ivory appears to primarily ground such

cause of action upon the following contentions:

(a)    He incurred the attorney fees that constitute his claim as a result of the

California Superior Court litigation;

(b)    The Debtor initiated such litigation by filing a complaint in the California

19

Superior Court that was packed with false representations; and

(c)    Such attorney fees consequently arose as a result of such false

representations.

The Court quickly concludes that the following contentions, even if true, do

not form the basis for a successful cause of action for nondischargeability under

§ 523(a)(2)(A).  The Court so concludes because, as a matter of law, "'[f]or a

debt to fall within th[e] exception [of § 523(a)(2)(A)], money, property or services

... must actually have been obtained by the false pretenses or representations or

by means of actual fraud.'"  In re Borreggine, 441 B.R. 467, 470 (Bankr.W.D.Pa.

2011) (quoting 4 Collier on Bankruptcy, ¶ 523.08[1][a] at 523-43 (Bender 2010),

and also citing In re Rountree, 330 B.R. 166, 171 (E.D.Va. 2004), which relies

upon the same passage from Collier); see also In re Bailey, 442 B.R. 416, 419

(Bankr.W.D.Pa. 2011) (same).  The foregoing basis for Ivory's § 523(a)(2)(A)

cause of action fails because the alleged false representations in question (i.e.,

those that were contained in the complaint that was filed by the Debtor with the

California Superior Court) failed to generate any money, property, services, or

credit for either the Debtor or some entity other than Ivory.  The Court holds that

it is irrelevant to the § 523(a)(2)(A) analysis in the instant matter that such

alleged false representations can be viewed as perhaps having generated money

in the form of an attorney fee award for Ivory, who is the creditor that is

potentially owed such money by the Debtor.

The foregoing basis for Ivory's § 523(a)(2)(A) cause of action also fails

because, as a matter of law, false representations are only actionable under

20

§ 523(a)(2)(A) if they were known to be false when they were made, and if the
same were made with an intent to deceive.  *See* In re Ali, 321 B.R. 685, 690
(Bankr.W.D.Pa. 2005); In re Schempp, 420 B.R. 637, 640 (Bankr.W.D.Pa. 2009).
Quite simply, Ivory has failed to preponderantly prove in this Court that, if the
representations that the Debtor made in the complaint that she filed with the
California Superior Court were false, she was aware of such falsity and she
nevertheless proceeded to plead the same in such complaint with an intent to
deceive.

Finally, Ivory appears to also contend, as a basis for prevailing under
§ 523(a)(2)(A), that (a) his claim for attorney fees is really a claim that is based
upon his contracts with the Debtor for the provision of services to her, (b) the
Debtor never really had any intent of honoring such contracts with Ivory, (c) the
Debtor thus obtained such services by false pretenses, and (d) his claim for
attorney fees thus essentially constitutes a claim against the Debtor for services
that were obtained by false pretenses.  The Court suspects that this last basis
upon which Ivory predicates his § 523(a)(2)(A) cause of action is perhaps an
effort by Ivory to remedy the shortcoming that the Court just addressed regarding
the primary basis upon which Ivory attempts to prevail under § 523(a)(2)(A), that
is that the Debtor did not obtain anything by virtue of any false representations
that she may have made in the complaint that she filed with the California
Superior Court.  However, and unfortunately for Ivory, he has failed to
preponderantly prove in this Court that the Debtor never really had any intent of
honoring her contracts with Ivory, and that she thus obtained services from Ivory

21

by false pretenses.

Therefore, Ivory's claim shall be discharged, that is such claim cannot be

excepted from the Debtor's discharge pursuant to § 523(a)(2)(A).

**V.**

Ivory objects to the Debtor's amendments of her Bankruptcy Schedules B

and C and her Statement of Financial Affairs on the ground that such

amendments are additional vehicles by which the Debtor seeks to perpetuate a

fraud upon Ivory, her other creditors, and the Chapter 7 Trustee in the instant

case.  The Court must overrule such objection by Ivory, however, because the

Court finds that the Debtor has committed fraud neither during the process of

administration of her bankruptcy case nor by virtue of the instant amendments to

her Bankruptcy Schedules.

**BY THE COURT**


    **/s/**
**BERNARD MARKOVITZ,**
**U.S. Bankruptcy Judge**